IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MCI WORLDCOM NETWORK :
SERVICES, INC., et al., :
  Plaintiffs :
   :
v. : Civil No. AMD 00-1518
   :
VERIZON MARYLAND, INC., et al., :
  Defendants :
    ...o0o...

MEMORANDUM

 This case arises under the local compensation provisions of the Telecommunications Act of 1996. Plaintiffs, MCI WorldCom Network Services, Inc., and MCIMetro Access Transmission Services LLC (together, "WorldCom"), seek declaratory and injunctive relief against the Maryland Public Service Commission and Verizon Maryland, Inc. ("Verizon"), a competing telecommunications provider. I stayed the case in 2001 pending the resolution of similar actions then pending before the United States Court of Appeals for the Fourth Circuit and, thereafter, before the Supreme Court. Now ready for decision are defendants' motions to dismiss, which rely principally on numerous alleged jurisdictional impediments to judicial review of Public Service Commission determinations. The parties have filed supplemental memoranda and a hearing was held on February 10, 2003. For the reasons set forth below, I shall deny the motions to dismiss. Nevertheless, for good and sufficient reasons, I shall stay this action for a brief additional period pending the completion of on-going administrative proceedings before the Maryland Public Service Commission.

## FACTS and PROCEDURAL HISTORY

Congress mandated in the Telecommunications Act of 1996 ("the 1996 Act" or "the Act"), Pub. L. 104-104, 110 Stat. 56, *codified at* 47 U.S.C. §§ 151 *et. seq.,* the creation of a new telecommunications regime intended to foster competition in local telephone markets. The Act imposed a general duty on all telephone carriers to interconnect directly or indirectly with the facilities and equipment of other telephone carriers. *Verizon Md., Inc. v. Public Service Commission*, 535 U.S. 635, ---, 122 S. Ct. 1753, 1756 (2002); 47 U.S.C. § 251(a). Specifically, Congress required incumbent local exchange carriers ("ILECs") to enable their competitors, so-called "competitive local exchange carriers" ("CLECs"), to "interconnect" with ILEC networks so that CLECs may use those facilities to provide competing local telephone service. *Id.* Congress also required ILECs to offer the constituent parts or "elements" of their networks for leasing by new entrants on an element-by-element or "unbundled" basis, called unbundled network elements (UNEs), at rates, terms and conditions that are just, reasonable and nondiscriminatory, thus permitting CLECs to combine such UNEs and provide a competing telecommunications service. *See* 47 U.S.C. § 251(c)(3). In addition, Congress required ILECs to make any telecommunications service that the incumbent offers its own customers available to new entrants at wholesale so that new entrants may resell those services to their own customers. *See id.* § 251(c)(4).

An ILEC "may negotiate and enter into a binding agreement" with a CLEC to fulfill these duties *Id*. §§ 252(a)(1), 251(c)(1). Indeed, the two carriers may negotiate such an

agreement "without regard to" the substantive standards of the Act. *Id*. § 252(a)(1). If the two carriers cannot fully negotiate an agreement, however, each may petition the relevant state public utility commission and seek "arbitration" to resolve any disputed issues. *Id*. § 252(b)(1). A state commission, if it wishes, may opt out, leaving the Federal Communications Commission ("FCC") to arbitrate in its stead. *Id*. §§ 252(a)(1), 252(e)(5).

Once an interconnection agreement is in place, the carriers must submit it to the state commission for approval or rejection. *Id*. 252(e)(1). The state commission must ensure that each agreement is consistent with the requirements of the Act, but may also assure compliance with the requirements of state law, such as intrastate quality service standards. *Id*. § 252(e)(2), (3). The state commission may only reject a negotiated agreement if it finds that the agreement (or any provision) discriminates against a third party telecommunications carrier, or is not consistent with the public interest, convenience and necessity. *Id*. § 252(e)(2)(a). A party aggrieved by a "determination" of a state commission under § 252 may bring an action in federal district court "to determine whether the agreement . . . meets the requirements" of §§ 251 and 252. *Id.* § 252(e)(6).

In August 1996, the FCC issued an order which established a method for price-setting when an ILEC and an CLEC could not reach agreement. *In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, First Report and Order, 111 FCCR 15499 (rel. Aug. 8, 1996) ("*Local Competition Order*"). The *Local Competition Order* included the FCC's choice of the cost methodology, the "total element long-run

incremental cost" ("TELRIC"), which state commissions must employ in resolving disputes between carriers regarding the costs ILECs are entitled to recover from a new entrant for providing interconnection and network elements. *Local Competition Order*, ¶¶ 672-732. The *Local Competition Order* also prescribes rules for determining the points in the ILECs network at which new entrants may interconnect with the incumbent for exchange of local telephone calls. *Local Competition Order*, ¶¶ 192-212. Finally, the *Local Competition Order* established a list of seven specific network elements that incumbents must provide to new entrants. *Id.* ¶¶ 366-528; 47 C.F.R. § 51.319 ("Rule 319").

On review of the *Local Competition Order*, the United States Court of Appeals for the Eighth Circuit vacated several of its provisions, including the TELRIC pricing methodology, on the ground that the 1996 Act gave state commissions, not the FCC, jurisdiction to interpret the pricing provisions of sections 251 and 252 of the Act. *Iowa Utils. Bd. v. FCC*, 120 F.3d 753, 794-900 (8th Cir. 1997), *aff'd in part and rev'd in part sub nom. AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366 (1999). Subsequently, the Supreme Court reversed the Eighth Circuit and held that Congress conferred on the FCC authority to establish national pricing standards under §§ 251 and 252. *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 376-85 (1999). The Court remanded the case to the Eighth Circuit to address the substantive validity of the FCC's cost methodology. On remand, the Eighth Circuit found fault with the FCC's approach, and it specifically rejected the FCC's forward-looking cost approach. *Iowa Utils. Bd. v. FCC*, 219 F.3d 744 (8th Cir. 2000). Last term, the Supreme

Court once again weighed in, upholding TELRIC and other exercises of the FCC's discretion in promulgating implementing regulations under the Act. *See Verizon Communications, Inc. v. F.C.C.*, — U.S. --- (2002).

In the meantime, closer to home, shortly after the passage of the Act, WorldCom began negotiations with Verizon, which was then known as Bell Atlantic-Maryland, Inc., to reach an interconnection agreement. On August 27, 1996, WorldCom filed a petition with the Maryland Public Service Commission for arbitration of unresolved issues, including the leasing of UNEs, the rates for same, and the points of interconnection between the two companies' networks. The Public Service Commission made WorldCom a party to an on-going Commission case, No. 8731, which previously had been opened for arbitration of interconnection agreements between other new entrants and Verizon.

Thereafter, in the course of the proceedings, the Public Service Commission rejected WorldCom's proposal that Verizon be required to lease "dark fiber" and "subloop" network elements to WorldCom, *see* Commission Order No. 73010, at 13-14, 25-26 (rel. Nov. 8, 1996); *see also* Commission Order No. 73168, at 3, 11 (rel. Jan 28, 1997), and further determined that neither Verizon's proposed cost model nor the cost model urged by WorldCom (the so-called "Hatfield Model," which was jointly sponsored by AT&T and WorldCom), would be adopted as the sole methodology for determining permanent UNE rates. The Public Service Commission directed the parties to file proposed UNE rates using its own methodology, *see* Commission Order No. 73010, at 3; Commission Order No. 73707

(rel. Sept. 22, 1997); Commission Order No. 74365 (rel. July 2, 1998). Furthermore, it determined that WorldCom must establish at least one point of interconnection with Verizon's network in each of Verizon's "access tandem serving areas." *See* Commission Order No. 73725 (filed Oct. 9, 1997).

In time, the Public Service Commission resolved all outstanding issues in the Verizon-WorldCom arbitration and ordered the parties to file for its approval an interconnection agreement; it affirmed a final agreement between Verizon and WorldCom on April 24, 2000.

After the Public Service Commission had issued its Order No. 74365 setting rates for UNEs in July 1998, several parties, including WorldCom, filed motions for rehearing. *See* Commission Order No. 76694, at 2 (rel. Jan. 19, 2001). On September 5, 2000, WorldCom renewed its request for reconsideration of the loop and switching rates. Thereafter, although the Public Service Commission ostensibly denied all requests for rehearing and formally closed Case No. 8731, *see* Order No. 76694, at 3, it nevertheless immediately opened a new case, No. 8879, and made clear that it would in fact reconsider all issues in the new case.

WorldCom filed this action after the Public Service Commission approved the challenged interconnection agreement. In Counts I and II of the amended complaint, WorldCom alleges that the UNE rates incorporated into the arbitrated interconnection agreement are arbitrary and capricious, and thus violate the Act and binding FCC determinations. In Counts III and IV, WorldCom alleges that the Act requires Verizon to

permit (and requires the Public Service Commission to order Verizon to permit) unbundled access to dark fiber and subloop network elements. Finally, in Count V, WorldCom alleges that the Act entitles it to interconnect with Verizon facilities in a manner different from that ordered by the Public Service Commission.

### *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635 (2002)

In *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 122 S. Ct. 1753 (2002), one of the cases prompting the earlier stay of this action, the Supreme Court resolved important jurisdictional issues raised therein by the Maryland Public Service Commission, issues which have been raised here as well. In that case, WorldCom and Verizon had negotiated an interconnection agreement separate from the one at issue here. That agreement had also been approved by the Maryland Public Service Commission. Several months after the Public Service Commission approved the interconnection agreement, Verizon refused to pay WorldCom for calls made to Internet service providers ("ISPs"). WorldCom filed a complaint with the Public Service Commission, which determined that, as a matter of state contract law, ISP calls were compensable local traffic under the interconnection agreement between Verizon and WorldCom. Thereupon, Verizon sued, *inter alia*, the Public Service Commission (in its own name and also the individual commissioners in their official capacities) in this court, asserting subject matter jurisdiction under 47 U.S.C. § 252(e)(6) and 28 U.S.C. § 1331. Verizon asserted that the Public Service Commission's order violated the

Act and a ruling of the FCC. Judge Smalkin dismissed the action on jurisdictional grounds and the Fourth Circuit affirmed.

The Supreme Court unanimously reversed the Fourth Circuit. First, it held that a federal district court had subject matter jurisdiction under 28 U.S.C. § 1331 to review a state utility commission's interpretation and enforcement of the interconnection agreement at issue. *Verizon Md., Inc.*, 535 U.S. at ___, 122 S. Ct. at 1761. Because the Court held there was jurisdiction under 28 U.S.C. § 1331, it declined to decide whether there was also subject matter jurisdiction under § 252(e)(6). (The determination that the district court had subject matter jurisdiction to review the Public Service Commission's order interpreting the interconnection agreement assumed that the commission had the authority to interpret the interconnection agreements in the first instance. The Court noted that the "parties dispute whether it is in fact federal or state law that confers this authority, but no party contends that the Commission lacked jurisdiction to interpret and enforce the agreement." *Verizon Md., Inc.*, 535 U.S. at ___, 122 S. Ct. at 1758 n.2.).

In addition, the Court held that the doctrine of sovereign immunity embodied in the Eleventh Amendment did not bar Verizon's claim because the claims asserted against the individual commissioners in their official capacities were encompassed by the exception to the doctrine recognized in *Ex parte Young*, 209 U.S. 123 (1908), and its progeny. *Verizon Md., Inc.*, 535 U.S. at ___, 122 S. Ct. at 1760. The Court reasoned that Verizon's "prayer for injunctive relief-- that state officials be restrained from enforcing an order in contravention

of controlling federal law-- clearly satisfies" the requirements of the exception to Eleventh Amendment immunity crafted in *Ex parte Young* and its progeny. *Id.* It noted that Verizon's prayer for declaratory relief "seeks a declaration of the past, as well as the future, ineffectiveness of the [Commission]'s action, so that the past financial liability of private parties may be affected." *Id.* Nevertheless, because "no past liability of the State, or any of its Commissioners, [was] at issue," the Court concluded that the prayer for declaratory relief against the commissioners was permissible. *Id.*

Recently, upon the remand of the case, Judge Smalkin concluded, *inter alia*, that (1) the case could proceed against the individual commissioners sued in their official capacities; (2) 47 U.S.C. § 252 empowered the Public Service Commission to interpret and enforce interconnection agreements; and (3) § 252(e)(6) created a private right of action permitting a challenge such interpretations, subject to the four-year general federal statute of limitations. *Verizon Md., Inc. v. RCN Telecom Servs.*, 232 F. Supp. 2d 539 (D. Md. 2002); *see also id.*, No. CIV. S-99-2061, 2003 WL 1063703, --- F.Supp.2d ---  (D. Md. March 5, 2002).

## ANALYSIS

Defendants seek dismissal of this case on numerous grounds. The commissioners concede, as they must, that the Supreme Court has resolved jurisdictional issues they originally raised, ejecting their contentions; nevertheless, they assert that important jurisdictional issues remain open notwithstanding the Supreme Court's opinion. Specifically, they seem to persist in their assertions that (1) WorldCom's claims are without the scope of

*Ex parte Young* and that there has been no waiver of Eleventh Amendment immunity, and (2) WorldCom has failed in one or more respects to exhaust its administrative remedies, thus defeating judicial review. Verizon joins in one or more of these contentions, and it also contends that the claims against it are moot. These assertions lack merit.

I.

Section 252(e)(6) of the Act expressly confers a private right of action on a carrier aggrieved by the determination of a public service commission approving an interconnection agreement such as the one here. Section 252(e)(6) provides:

> In any case in which a State commission makes a determination under this section [252], any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the [interconnection] agreement ... meets the requirements of [sections 251 and 252].

47 U.S.C. § 252 (e)(6). Clearly, such a private right of action may be maintained in federal court, under both that section's plain language as well as under 28 U.S.C. § 1331. *Verizon Md. Inc.*, 535 U.S. at ---, 122 S. Ct. at 1758-59.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Even assuming that some substantial question might otherwise be presented as to whether Congress could validly abrogate Eleventh Amendment immunity under the Act as the Public Service Commission contends, *but see Verizon Md., Inc.*, 535 U.S. at ---, 122 S. Ct. at 1762

(Souter, J., concurring)(observing that the very question whether the Eleventh Amendment bars relief under the Act is "open to some doubt"), because the individual commissioners have been joined here in their official capacities, *Ex parte Young*, 209 U.S. 123 (1908), plainly permits judicial review of the interconnection agreement at issue here.

In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc.*, 535 U.S. at ___, 122 S. Ct. at 1760 (quoting *Idaho v. Coeur d' Alene Tribe*, 521 U.S. 261, 296 (1997)(O'Connor, J., concurring)).

The Supreme Court, when analyzing a similar complaint (i.e., one challenging the *interpretation and enforcement* rather than *approval* of an interconnection agreement) against the commissioners in *Verizon*, held that the prayer for injunctive relief requesting that "state officials be restrained from enforcing an order in contravention of controlling federal law" clearly satisfied the "straightforward inquiry" of *Ex parte Young*. *Id.* at 1760. The Court observed that it had "approved injunction suits against state regulatory Commissioners in like contexts." *Id.* (citations omitted); *see RCN Telecom Services*, 232 F. Supp. 2d at 547.

It is clear that the provisions of the instant interconnection agreement arbitrated and approved by the Public Service Commission governs the economic relationship between WorldCom and Verizon and, therefore, WorldCom's performance under that agreement, if burdened by a misinterpretation by the Public Service Commission of the Act, constitutes

an ongoing violation of federal law.[1] Furthermore, WorldCom seeks only prospective relief against the commissioners, namely, a declaration that the challenged actions are unlawful, and reformation of the contract between the private parties to comply with federal law or an order requiring such reformation. First Am. Compl. at 23-24. Accordingly, it is clear that WorldCom may bring this suit against the individual commissioners pursuant to *Ex Parte Young*.[2]

## II.

Ordinarily, exhaustion of administrative remedies is required before a case will be considered ripe for judicial review. *Placeway Const. Corp. v. United States*, 920 F.2d 903,

---

[1]*Accord: MCI Telcoms. Corp. v. PSC*, 216 F.3d 929, 939 (10th Cir. 2000); *Michigan Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 867-68 (6th Cir. 2000); *MCI Telcoms. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 344 (7th Cir. 2000); *AT&T Communications v. BellSouth Telecomms., Inc.*, 238 F.3d 636, 647 (5th Cir. 2001).

[2]Defendants argue that the *Ex parte Young* doctrine does not apply because the act of arbitrating an interconnection agreement is a discretionary act, citing *Seminole Tribe v. Florida*, 517 U.S. 44 (1996), in which the Supreme Court held the act of negotiation as a discretionary act and that, accordingly, injunctive relief should be barred under *Ex parte Young.* In *Seminole Tribe*, the Eleventh Circuit heard a consolidated action where plaintiff Native American tribes brought suit to compel states to comply with provisions of the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701 et seq. The Supreme Court relied on two important factors to determine that the IGRA's compacting process demonstrated that the governors enjoyed a broad discretion: (1) the IGRA provides for the negotiation of a contract, the terms of which are left to the discretion of both the state and the tribe and; (2) the IGRA provides an alternate procedure should the state decide not to negotiate. *Seminole Tribe*, 517 U.S. at 55. The facts in *Seminole Tribe* are readily distinguishable from those here because the IGRA did not require the parties to submit the agreement to the state after an agreement is in place, for approval or rejection by the state only after it determines that the agreement is consistent with certain requirements of the Act and state law. Regardless of the scope of the commissioners' discretion under the Act, *Ex parte Young* makes clear that state officials do not have discretion to violate federal law. *Ex parte Young*, 209 U.S. at 159. Accordingly, I reject the argument that the *Ex parte Young* doctrine does not apply because arbitrating an interconnection agreement is a discretionary act.

906 (Fed. Cir. 1990). Assessing ripeness requires a two-fold inquiry: (1) whether the issues are fit for judicial determination, and (2) whether a hardship to the parties of withholding judicial determination. *Abbot Laboratories v. Gardner*, 387 U.S. 136, 149 (1967); *Md. Right to Life State PAC v. Weathersbee*, 975 F. Supp. 791, 795 (D. Md. 1997); *Mulberry Hills Dev. Corp. v. United States*, 772 F. Supp. 1553, 1558 (D. Md. 1991).[3] Defendants contend that the case is not fit for judicial determination because the agency action at issue does not constitute a "final agency action" and that administrative remedies have not been exhausted. Verizon also asserts that the issues involved are not legal issues.[4] WorldCom strongly disputes these contentions and, in addition, asserts that if the issues are considered unripe for review at this time, it will suffer undue hardship as a result of the increased payments it is

---

[3] It is well understood that the basic rationale of the ripeness doctrine is "to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Lab.*, 387 U.S. at 148-49. Judicial review can be hindered by the failure to exhaust administrative remedies because the agency may not have an adequate opportunity to assemble and analyze relevant facts and to explain the basis for its action. *McKart v. United States*, 395 U.S. 185, 195 (1969).

[4] The suggestion that review of the order setting UNE prices is not purely legal is not persuasive. WorldCom correctly asserts that, although their claims in Counts I and II are predominately legal, in cases arising under Section 252(e)(6) of the Act, the Fourth Circuit has routinely entertained factual challenges to state commission determinations approving terms for interconnection agreements. *See, e.g., GTE South, Inc.*, 199 F.3d at 747 ("According to GTE, it is not enough that Hatfield's *methodology* [the UNE cost model adopted by the Virginia state commission] complies with the FCC's rules. GTE goes on to attach the *accuracy* of the Hatfield model. Complaints about accuracy are, of course, assertions of factual error, which we review under the substantial evidence standard.") (emphasis in original); *AT&T Comms. of Va. Inc. v. Bell Atlantic-Va., Inc.,* 197 F.3d 663, 668 (4th Cir. 1999) (stating that the court reviews state commission's "fact-findings under the substantial evidence standard"). Accordingly, there is no impediment to review of pricing methodology on the ground that factual issues are embedded in the underlying legal questions.

required to make pursuant to the interconnection agreement. Although I reject defendants' contention that the case is not ripe in a jurisdictional sense, I agree with the commissioners that a brief delay in affording judicial review is warranted under the unique circumstances of this case.

The disputatiousness surrounding the issue of whether the case is ripe stems from a decision by the Public Service Commission to deny reconsideration while simultaneously granting reconsideration of the issues raised by WorldCom. As set forth above, after resolving the issues outstanding in the Verizon-WorldCom arbitration and ordering the parties to file for its approval an interconnection agreement, the Public Service Commission clearly denied several of WorldCom's motions to reconsider. The decision also closed Case No. 8731, the case that was originally opened for arbitration of interconnection agreements between new entrants and Verizon. However, although clearly denying WorldCom's request to re-examine the UNE rates in Maryland given the evolution of telecommunications technology during the pendency of Case 8731, the Public Service Commission, when closing that case, concluded that the request for re-examination of UNE rates had significant merit. *See* Order No. 76694, at 3. Accordingly, the Public Service Commission opened a new docket, Case No. 8879, and directed the parties to refresh the cost studies, models and rates relied upon in the previous proceeding and to address the effect of the various judicial and regulatory orders and decisions, in particular, the Eighth Circuit's TELRIC decision in *Iowa Utils. Bd. v. FCC*, 219 F.3d 744 (8th Cir. 2000), on the issue of rates for unbundled network

elements. *See* Order No. 76694, at 3. Additionally, the Commission stated it will permit the parties to raise any issues raised on rehearing and consider them within the scope of this new proceeding. *Id*. Since that time, obviously, the regulatory landscape has further evolved in significant ways.

I agree with WorldCom argues that its cost methodology claims are fit for judicial review because an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties. *See Abbot Labs.*, 387 U.S. at 148-49; *Reno v. Catholic Social Sevs., Inc.*, 509 U.S. 43, 57 (1993); *Arch Mineral Corp. v. Babbit*, 104 F.3d 660, 665 (4th Cir. 1997); *Fort Sumter Tours v. Andrus*, 564 F.2d 1119, 1123 (4th Cir. 1977). Both the Supreme Court and Fourth Circuit have explained in analogous circumstances that "[w]here the Commission's formal disposition to deny reconsideration, and where it makes no alteration in the underlying order, we will not undertake an inquiry into whether reconsideration 'in fact' occurred . . . it is the Commission's formal action, rather than its discussion, that is dispositive." *ICC v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 280-81 (1987) (holding that the order denying reconsideration was not itself an appealable order but that it rendered appealable the substantive order on which reconsideration had been sought); *Betty B. Coal Co. v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor*, 194 F.3d 491, 496-97 (4thCir. 1999)(describing rule of *Brotherhood*

*of Locomotive Engineers* as a "bright line" rule that "the agency's 'formal disposition' controls").[5]

At bottom, WorldCom correctly argues that the Public Service Commission's express denial of all requests for reconsideration of its July 2, 1998, pricing order and the closing of case No. 8731 renders this case ripe for adjudication in any strict jurisdictional sense. WorldCom also argues, correctly, that the interconnection agreement and the UNE rates contained therein create a binding and enforceable legal obligation and set the definitive terms on which WorldCom may obtain access to Verizon's network, creating a formal

---

[5]*See also AT&T Comms. Sys. v. Pacific Bell*, 203 F.3d 1183 (9th Cir. 2000):

> Unlike the Administrative Procedure Act, which authorizes review only of "final agency action," 5 U.S.C.§ 704, section 252 does not provide that there must be a "final" determination after exhaustion of all available remedies. It requires only that there be "a determination." A state commission's decision can be "a determination" even if it is subject to a request for rehearing so long as the decision is operational or binding on the parties in the absence of a request for rehearing. The CUPC's order . . . was "a determination" within the meaning of § 252(e)(6). It stated that the agreement between AT&T and Pacific Bell "is approved pursuant to the requirements of the Telecommunications Act of 1996" and that the parties application for review "is closed . . . ." Once the agreement is deemed approved, the parties are free to seek judicial review pursuant to § 252 (e)(6).

*Id.* at 1186 (citing *GTE South, Inc. v. Morrison*, 199 F.3d 733, 744 (4th Cir. 1999)). Although there is no doubt here that there has been a "determination" by the Maryland Public Service Commission in its approval of a final interconnection agreement between competing carriers, there is also no denying the fact that the decision in the new case will likely address the same issues that WorldCom wishes this court to address.

administrative decision whose effects are felt in a concrete way by the challenging parties. *Arch Mineral Corp.*, 104 F.3d at 665.[6]

### III.

Defendants also contend that jurisdiction is lacking because WorldCom seeks to raise issues before this court according to rules established in an FCC Order which it did not raise before the Public Service Commission in the arbitration proceedings. The commissioners argue that (1) this court should not consider arguments not yet raised before the administrative agency and that (2) this court may not retroactively apply an FCC Order to a decision of the Public Service Commission.

The Fourth Circuit has explained that a "reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Pleasant Valley Hosp. v. Shalala*, 32 F.3d 67, 70 (4th Cir. 1994) (citing *Unemployment Compensation Com. v. Aragon*, 329 U.S. 143, 155 (1946)); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952); *Cisternas-Estay v. Immigration and Naturalization Service*, 531 F.2d 155, 160 (3d Cir. 1976), *cert. denied*, 429

---

[6]In addition to arguing that these counts are fit for judicial determination, WorldCom asserts that the rates the interconnection agreement requires them to pay imposes an immediate harm on WorldCom, and creates a significant hardship on its ability to compete effectively with Verizon in Maryland's local telephone markets. Furthermore, they state that issuing a stay would go against Congressional intent by creating unnecessary delay. I need not further consider these issues, as the additional delay I believe is appropriate shall be of short duration. Presumably, moreover, monetary, make-whole, relief will be available to WorldCom if same is appropriate.

U.S. 853 (1976). But the Court has noted, as well, that "this general rule is not a strict jurisdictional bar." *Id*. Thus, this contention is not a basis to defeat jurisdiction, but will inform the court's adjudicatory function once WorldCom's claims are considered on the merits.

IV.

Finally, Verizon argues that the counts relating to subloops and dark fiber and the number of connection points should be dismissed as moot because the changes to the arbitrated interconnection agreement WorldCom seeks are currently available from Verizon through published tariffs. "Mootness goes to the heart of the Article III jurisdiction of the courts." *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 228 (4th Cir. 1997). "When circumstances change from the time the suit is filed to the time of appeal, so that the appellate court can no longer serve the intended harm-preventing function or has no effective relief to offer, the controversy is no longer live and must be dismissed as moot." *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002) (citations omitted).[7] Generally speaking, one such circumstance mooting a claim arises when the claimant receives the relief he or she

---

[7] The Fourth Circuit has recognized that where a plaintiff seeks injunctive relief to stop an ongoing violation of federal law, "it is well established that the voluntary discontinuance of challenged activities by a defendant does not necessarily moot a law suit. . . . [D]efendants face a heavy burden to establish mootness in such cases because otherwise they would simply be free to return to [their] old way s after the threat of a law suit had passed." *Lyons P'ship, L.P., v. Morris Costumes, Inc.*, 243 F.3d 789 800 (4th Cir. 2001).

sought to obtain through the claim. *See Broughton v. North Carolina*, 717 F.2d 147, 149 (4th Cir. 1983) (per curiam).

Verizon contends that because the FCC presently acknowledges that subloops and dark fiber qualify as network elements, and because Verizon has made these UNEs available to WorldCom through tariffs, the claims are moot. Verizon alleges the same is true as to the single point of interconnection within a local access and transport area, because pursuant to FCC regulations promulgated according to the Act, an ILEC such as Verizon must make interconnections and network elements available to a CLEC, if it has agreed to provide those elements to any other CLEC in an interconnection agreement. *See* 47 C.F.R. § 51.809 (1997); *AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366, 395 (1999).

Contrary to Verizon's contention, "[t]ariffs and interconnection agreements . . . are altogether different beasts." *Verizon Md. Inc. v. RCN Telecom Services, Inc.*, --- F.Supp.2d --- , No. CIV. S-99-2061, 2003 WL 1063703, at *8 (D. Md. Mar. 5, 2003). The issue here is not whether Verizon already provides WorldCom with the unbundled subloops and dark fiber or points of interconnection, but whether the Public Service Commission erred in failing to have required Verizon to agree to provide these products in the interconnection agreement between the two carriers. The relief WorldCom seeks, reformation of the interconnection agreement, is not yet available to WorldCom. Thus, I do not find those claims moot.

**CONCLUSION**

For the foregoing reasons, I shall deny the motions to dismiss. Nevertheless, for good and sufficient reasons, I shall stay this action pending the completion of on-going administrative proceedings before the Maryland Public Service Commission.

Filed:   March 31, 2003                          _____/s/_____
                                                 ANDRE M. DAVIS
                                                 UNITED STATES DISTRICT JUDGE