IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **MCI WORLDCOM NETWORK SERVICES, INC.**, *et al.*, | * | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | Civil Action No. AMD-00-1518 |
| | * | |
| **VERIZON MARYLAND INC.**, *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

_____

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

MCI's most recent iteration of its complaint in this proceeding fails to present any issues that are properly before this Court at this time and therefore should be dismissed. MCI persists in challenging certain rates set by the Maryland Public Service Commission ("PSC") even though, as MCI itself concedes, those rates have now been superseded by new rates that already are in effect. Thus, MCI's request that the Court find the old rates unlawful is moot. MCI now has amended its complaint so that it also simultaneously challenges the new rates adopted by the PSC. Yet MCI has made exactly the same arguments concerning those new rates in its petition for reconsideration, which remains pending before the PSC. It is well established that such a pending petition for reconsideration renders non-final the PSC's order setting new rates, and thus MCI's challenge to those new rates is unripe. MCI's complaint accordingly should be dismissed.

### I. PROCEDURAL BACKGROUND

Under the Telecommunications Act of 1996, Verizon is required, among other things, to lease pieces of its network -- called unbundled network elements ("UNEs") -- to its competitors

for their use in providing competing local telephone service. The Act further provides that the terms and conditions of such leasing arrangements are to be determined in the first instance through negotiations but, to the extent the parties cannot reach an agreement, any open issues are to be resolved by state public utility commissions through arbitrations or similar proceedings. Pursuant to this provision, the PSC held a proceeding, Case No. 8731, to resolve various open issues between Verizon and MCI (among others) concerning UNE prices and related terms. On July 2, 1998, the PSC issued a written order in which it decided these open issues, including the prices at which Verizon would be required to provide UNEs ("1998 Order"). Verizon and MCI each filed a petition for reconsideration challenging portions of the 1998 Order on August 4, 1998 and August 3, 1998, respectively. MCI (then WorldCom) filed a Complaint challenging the 1998 Order in May 2000 and then amended its complaint in September 2000 (the "Amended Complaint"). Counts 1 and 2 of the Amended Complaint challenged the UNE prices adopted by the PSC in its 1998 Order.[1]

In July and August 2001, Verizon and the PSC[2] moved to dismiss the Amended Complaint, arguing that Counts 1 and 2 were not ripe for judicial review because the PSC had opened a new case to reexamine UNE rates and stated it would consider all pending petitions for reconsideration of the 1998 Order in that proceeding. The PSC further challenged the Court's jurisdiction to hear the appeal on Eleventh Amendment grounds. On March 31, 2003, the Court denied the Motions to Dismiss, finding that the PSC's decision to open a new docket to set new

---

[1]   Counts 3, 4, and 5 of the Amended Complaint challenged another PSC Order (issued on February 10, 2000) in the same proceeding, which refused to require Verizon to provide unbundled access to certain additional network elements or to require Verizon to allow WorldCom to interconnect with Verizon's network at a single point of interconnection within a LATA (local access and transport area). MCI subsequently dropped these counts when it filed its most recent amended complaint.

[2]   MCI has sued both the Commission and its individual Commissioners, in their official capacities. For purposes of this memorandum, they will be referred to, collectively, as the "PSC."

2

rates did not prevent the challenge to the 1998 Order in what was now a final and closed docket from being ripe for adjudication "in any strict jurisdictional sense."[3]

Nonetheless, the Court stayed the proceeding for a period of time pending completion of the PSC's newly-instituted proceeding on UNE rates.[4] On June 30, 2003, the PSC issued its Order in that case, Order No. 78552, setting new UNE rates in place of those that had been the subject of MCI's Amended Complaint (the "June 2003 Order").[5] The rates set in the June 2003 Order are currently in effect and are applicable retroactively to December 18, 2002. On July 5, 2003, the Court, noting that the PSC had issued its Order 78552 in the new UNE proceeding, directed the parties to submit supplemental status reports on July 28, 2003 regarding the effect of that Order on the Court's previous Scheduling Order. In its status report, MCI acknowledged that the June 2003 Order was not final because "the time for filing petitions for rehearing of [the June 2003 Order] has not yet expired and MCI intends to file a petition for rehearing in the next week (and other parties may do so as well)."[6] Thus, as MCI conceded, "the [June 2003 Order] remains subject to revision on rehearing.[7]" MCI also asserted in its status report that the fact that the June 2003 Order was not final meant that its challenge of the 1998 Order was not moot.[8] On July 30, 2003, MCI, Verizon and other parties filed their petitions for reconsideration of the June

---

[3]   Memorandum at 16.

[4]   *Id.* at 1.

[5]   Order No. 78552, *In the Matter of the Investigation Into Rates for Unbundled Network Elements Pursuant to the Telecommunications Act. of 1996*, Case No. 8879 (MD P.S.C. June 30, 2003) ("June 2003 Order").

[6]   MCI Status Report at 2.

[7]   *Id.*

[8]   *Id.*

3

2003 Order with the PSC. A copy of MCI's petition is attached hereto as Exhibit 1.[9] By direction of the PSC, MCI, Verizon and other parties filed responses to the various petitions for reconsideration on October 22, 2003. Those petitions for reconsideration remain pending before the PSC.

After considering the parties' Supplemental Status Reports, the Court issued a Scheduling Order on September 4, 2003. On October 17, 2003, MCI filed its Second Amended Complaint as required by the Scheduling Order. While leaving intact Counts 1 and 2 of the Amended Complaint -- which challenge the old rates set in the prior case -- the Second Amended Complaint adds new Counts 3-6, which challenge the *new* rates set by the June 2003 Order. These challenges are identical to those raised in MCI's petition for reconsideration of the June 2003 Order, which remains pending before the PSC.

## ARGUMENT

### I. THE COURT SHOULD DISMISS COUNTS 1 AND 2 AS MOOT.

The Court should dismiss Counts 1 and 2 of MCI's Second Amended Complaint, which seek prospective reformation of the parties' interconnection agreements, as moot because the UNE prices at issue in those counts are no longer in effect and have been superseded by the rates adopted in the June 2003 Order. As the June 2003 Order makes clear, "the rates and charges for unbundled network elements adopted in [the] Order are final rates and charges."[10] As such, the Order required Verizon to "file with the Commission a complete set of tariffs revised in

---

[9] To the extent these petitions and the June 2003 Order are considered outside the pleadings despite reference to them in the status report filed with the Court, Verizon requests the Court to treat and dispose of this motion as provided in Rule 56.

[10] June 2003 Order at 138.

4

accordance with [the] Order" on or before July 30, 2003.[11] It is well settled that courts will dismiss a complaint as moot when the court "can no longer serve the intended harm-preventing function or has no effective relief to offer." *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002) (internal citations and quotation marks omitted); *see also Maryland Highway Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991) ("A case is moot when it has lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.") (internal quotation marks omitted).

Here, the rates that MCI challenges as unlawful in counts 1 and 2 are no longer in effect and have been superseded by new rates.[12] Thus, any court ruling on whether those rates were lawful would amount to nothing more than an advisory opinion, and these counts should be dismissed as moot. *See, e.g.*, *Hillard v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, 169 F. Supp. 2d 416, 419 (D. Md. 2001) (citing *Deakins v. Monaghan*, 484 U.S. 193, 200 (1988)) ( "[W]hen a claim is rendered moot . . . the District Court [should] dismiss the relevant portion of the complaint.").

## II. COUNTS 3-6 ARE NOT RIPE FOR JUDICIAL REVIEW AND SHOULD THEREFORE BE DISMISSED.

Counts 3-6 of MCI's Second Amended Complaint should likewise be dismissed on ripeness grounds. The Court is now presented with the factual and procedural circumstance that

---

[11]   *Id.* at 139.

[12]   Even if the PSC were to vacate or stay the June 2003 Order, the UNE rates in effect would not be those underlying counts 1 and 2 of MCI's Second Amended Complaint. Instead, the UNE rates in effect would be those rates voluntarily agreed to by Verizon as a condition of the PSC's support of its application to the Federal Communications Commission for interLATA relief pursuant to section 271 of the Telecommunications Act of 1996. *See* Letter Order, *In the Matter of the Review by the Commission into Verizon Maryland Inc.'s Compliance with the Conditions of 47 U.S.C. § 271(c), Case No. 8921*, at 9 (Md. Public Serv. Comm'n Dec. 16, 2002) (attached hereto as Exhibit 2) and Letter from William R. Roberts, President, Verizon Maryland Inc., to Felecia L. Greer, Executive Secretary, Maryland Public Service Commission, at 1-2 (Dec. 17, 2002) (attached hereto as Exhibit 3). Therefore, under no circumstances can the UNE rates complained of in Counts 1 and 2 of MCI's Second Amended Complaint be in effect or necessarily part of an interconnection agreement between Verizon and MCI.

it found lacking when it denied Verizon's first Motion to Dismiss. Concluding that the PSC had formally denied the parties' petitions for reconsideration, the Court found that MCI's claims were ripe for judicial review. That is clearly not the case now presented. It is undeniable (1) that MCI, Verizon and other parties have filed petitions for reconsideration of the PSC's June 2003 Order; and (2) that MCI's petition for reconsideration before the PSC presents the very claims it makes in Counts 3, 4, 5, and 6 of the Second Amended Complaint. Because these petitions for reconsideration are pending before the PSC, the June 2003 Order may be revised by the PSC and that Order is not ripe for judicial review.

It is well settled that "[t]he timely filing of a motion to reconsider renders the underlying order nonfinal for purposes of judicial review." *Stone v INS*, 514 U.S. 386, 392 (1995). As the Supreme Court has explained, the ripeness doctrine protects courts from unnecessarily interfering with the actions of administrative agencies:

> Without undertaking to survey the intricacies of the ripeness doctrine, it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also *to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties*.

*Abbott Labs. v. Gardner*, 387 U.S. 139, 148-49 (1967) (*"Abbott Labs"*) (emphasis added). The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Servs., Inc.,* 509 U.S. 43, 57 n.18 (1993). Moreover, when a complaint seeks declaratory and injunctive relief, as MCI's complaint does, courts are particularly reluctant to intervene in the absence of a final agency order that is ripe for resolution. *See Abbott Labs*, 387 U.S. at 148.

This Circuit has similarly dismissed complaints seeking review of agency decisions on ripeness grounds, holding that:

> A case is fit for judicial decision where the issues to be considered are purely legal ones and *where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings*.

*Arch Mineral Corp. v. Babbitt*, 104 F.3d 660, 665 (4th Cir. 1997) (emphasis added) (citing *Charter Federal Savings Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992)).

Here, the agency order at it issue is not final and is "dependent upon future uncertainties or intervening agency rulings" -- namely, the resolution of the pending petitions for reconsideration. Indeed, MCI's own petition for reconsideration raises precisely the same challenges to the PSC's Order as does its complaint before this Court. It would make little sense for the Court to intervene now and decide the very issues pending before the PSC. In these circumstances, governing precedent requires that Counts 3-6 of MCI's Second Amended Complaint be dismissed as unripe for judicial review.[13]

### III. CONCLUSION

For the reasons set forth above, MCI's Second Amended Complaint should be dismissed without leave to further amend.

---

[13] MCI cannot plausibly claim that dismissing Counts 3-6 will cause it harm, *see Abbott Labs*, 387 U.S. at 149, because it is seeking the same relief from the PSC.

Respectfully submitted,

_____

| | |
|---|---|
| Catherine Kane Ronis | David A. Hill (Bar No. 11612) |
| Samir Jain | Vice President & General Counsel |
| Wilmer, Cutler & Pickering | Verizon Maryland Inc. |
| 2445 M Street, NW | 1 East Pratt Street |
| Washington, DC 20037 | Baltimore, Maryland 21202 |
| (202) 663-6000 | (410) 393-7725 |
| *Of Counsel* | |
| | James P. Garland (Bar No. 00182) |
| | Scott Haiber (Bar No. 25947) |
| | Miles & Stockbridge P.C. |
| | 10 Light Street |
| | Baltimore, Maryland 21202 |
| | (410) 727-6464 |
| Dated:  October 31, 2003 | *Attorneys for Verizon Maryland Inc.* |