IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MCI WORLDCOM NETWORK SERVICES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VERIZON MARYLAND INC., et al.,<br><br>Defendants. | Civil Action No. AMD 00-CV-1518 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiffs MCI WORLDCOM Network Services, Inc. and MCImetro Access Transmission Services LLC (collectively "MCI"), by and through undersigned counsel, respectfully submit this Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiffs' Second Amended Complaint. For the reasons set forth below, this Court should deny the Motions to Dismiss filed by the Maryland Public Service Commission and its Commissioners (collectively "MPSC" or "Commission") and Verizon Maryland Inc. ("Verizon").

**BRIEF BACKGROUND**

This Court is already familiar with the background of this case, as set forth in its decision in MCI WORLDCOM Network Services, Inc. v. Verizon Maryland, Inc., No. AMD 00-1518,

slip op. at 2-7 (D. Md. Mar. 31, 2003) ("Order Denying Motions to Dismiss").  Accordingly, MCI will briefly recite here only those facts relevant to the instant motion.

Pursuant to the Telecommunications Act of 1996 ("1996 Act" or "the Act"), 47 U.S.C. § 251 et seq., incumbent local telephone carriers, such as Verizon, are required to lease the individual components of their local telephone networks (known as "unbundled network elements" or "UNEs") to requesting carriers, such as MCI.  See 47 U.S.C. § 251(c)(3).  In turn, binding regulations of the Federal Communications Commission ("FCC") require that such UNEs be leased at cost-based rates calculated according to the FCC's forward-looking methodology, known as the "Total Element Long Run Incremental Cost" methodology or "TELRIC."  See Verizon Communications, Inc. v. FCC, 535 U.S. 467, 495-96 (2002); see also 47 C.F.R. § 51.505.  The 1996 Act further provides that if the two carriers cannot reach an agreement by negotiation, they may ask the governing state commission to conduct an "arbitration" to resolve the disputed issues.  47 U.S.C. § 252(b)(1).  The results of the negotiation and arbitration process are memorialized in an "interconnection agreement" between the carriers, which is then submitted for approval to the state commission.  Id. § 252(e).  An interconnection agreement may be challenged in the appropriate federal district court.  Id. § 252(e)(6).

On August 27, 1996, after negotiating with Verizon regarding the terms of interconnection, MCI filed a petition with the Commission for compulsory arbitration of unresolved issues, pursuant to Section 252(b) of the Act.  The issues presented for arbitration included, among others, the rates at which Verizon would be required to lease UNEs to MCI on an unbundled basis.  At the same time that the arbitration proceedings were taking place, the MPSC held hearings and received evidence in a separate UNE pricing docket.  On November 8, 1996, the Commission issued an order in which it adopted interim UNE rates and instituted

"Phase II" of Case No. 8731 to review the competing cost models and set permanent UNE rates. See Second Am. Compl. ¶ 29.  The Commission issued an order adopting a pricing methodology for the Phase II proceedings on July 2, 1998.  <u>In re the Petitions for Approval of Agreements and Arbitration of Unresolved Issues Arising Under Section 252 to the Telecommunications Act of 1996</u>, PSC Case No. 8731, Order No. 74365 (Md. Pub. Serv. Comm'n July 2, 1998).  In that order, the MPSC declined to adopt the cost model jointly sponsored by MCI and AT&T as the methodology for determining permanent UNE rates, and instead directed parties to submit rates using Commission-determined inputs.  <u>See</u> <u>id.</u> at 5-6.  Several parties, including MCI, subsequently filed petitions for reconsideration.

Almost four years after MCI filed its petition for arbitration, on February 10, 2000, the Commission resolved all final outstanding issues in the MCI-Verizon arbitration and ordered the parties to file a joint Interconnection Agreement for approval incorporating the terms arbitrated by the Commission.  The Commission approved the MCI-Verizon Interconnection Agreement on April 24, 2000.  MCI then sought review of the interconnection agreement in this Court, asserting that the MPSC's resolution of the pricing disputes and certain other interconnection disputes violates the requirements of the 1996 Act and the FCC's implementing regulations.

On January 19, 2001, the Commission issued an order formally closing the prior (Phase II) pricing docket, and opening a new docket to reexamine and establish new permanent UNE rates in Maryland.  <u>In re the Petitions for Approval of Agreements and Arbitration of Unresolved Issues Arising Under Section 252 to the Telecommunications Act of 1996, In re the Investigation Into Recurring Rates for Unbundled Network Elements Pursuant to the Telecommunications Act of 1996</u>, PSC Case Nos. 8731, 8879, Order No. 76694 (Md. Pub. Serv. Comm'n Jan. 19, 2001) ("Order No. 76694").  The Commission issued its final decision in that docket on June 30, 2003.

In re the Investigation Into Recurring Rates for Unbundled Network Elements Pursuant to the Telecommunications Act of 1996, PSC Case No. 8879, Order No. 78552 (Md. Pub. Serv. Comm'n June 30, 2003) ("Final UNE Order").  There, the Commission again rejected the TELRIC-compliant cost model proposed by MCI and, instead, again adopted Verizon's unlawful cost models and erroneously adopted various other aspects of Verizon's pricing proposals.  See id. at 15-18; Second Am. Compl. ¶¶ 36, 52-78.  Thereafter, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, and with the consent of the parties, MCI filed a Second Amended Complaint to withdraw its previously-raised non-pricing claims, and to add four new counts (Counts Three through Six) challenging various unlawful aspects of the Final UNE Order.

## ARGUMENT

**I.    COUNTS THREE THROUGH SIX OF MCI'S SECOND AMENDED COMPLAINT ARE RIPE.**

The defendants' motions to dismiss Counts Three through Six of the Second Amended Complaint are based on a single premise:  that MCI's challenges to the Final UNE Order allegedly are unripe because motions for reconsideration are pending before the MPSC.[1]  As this Court has recognized in this case, however, that is not the law.  In their Memoranda in support of their pending motions to dismiss the Second Amended Complaint, both defendants readily concede that the UNE rates adopted in the Final UNE Order are currently in effect and are binding on the parties.  See Verizon Mem. at 1, 4-5; MPSC Mem. at 6, 11.  Thus, the Final UNE Order created binding and enforceable obligations — now in effect — that negatively impact MCI's ability to compete in the Maryland telecommunications markets.  Accordingly, MCI's

---

[1]    The MPSC alternately casts the argument as one of "ripeness" and of "exhaustion of administrative remedies."  See MPSC Mem. at 6-11.  Regardless of the label, the contention is the same:  that MCI's challenges to the Final UNE Order allegedly will not be ripe until the pending motions for reconsideration are resolved.  Id.

4

challenges to those determinations are ripe, and were properly raised in the Second Amended Complaint.

As this Court has held, claims challenging UNE rates and the MPSC's cost methodology for determining UNE rates are ripe for judicial review where the challenged order is "an administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging parties." Order Denying Motions to Dismiss at 15 (citing Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967); Arch Mineral Corp. v. Babbitt, 104 F.3d 660, 665 (4th Cir. 1997)). Here, it is undisputed that the UNE rates adopted by the MPSC in the Final UNE Order are "'final rates'" that are in effect and are binding on the parties. See Verizon Mem. at 4 (quoting Final UNE Order at 138); MPSC Mem. at 6, 11. Thus, for the same reason that MCI's challenges to the prior rates were ripe, MCI's challenges to the Final UNE Order likewise are ripe because, as this Court explained, "the UNE rates contained therein create a binding and enforceable legal obligation and set the definitive terms on which [MCI] may obtain access to Verizon's network, creating a formal administrative decision whose effects are felt in a concrete way by the challenging parties." Order Denying Motions to Dismiss at 16-17 (citing Arch Mineral Corp., 104 F.3d at 665).

Nevertheless, defendants cite to a host of cases arising, not under the 1996 Act, but under the Administrative Procedures Act ("APA") for the proposition that the Final UNE Order is not a "final order" because it "may be revised" by the MPSC on account of the pending motions for reconsideration. See, e.g., Verizon Mem. at 6; MPSC Mem. at 7-10. Such notions of finality and reconsideration that apply in APA review proceedings, however, are inapposite where, as here, the plaintiffs' claims arise under Section 252 of the 1996 Act. 47 U.S.C. § 252(e)(6). As this Court explained,

5

> Unlike the Administrative Procedure Act, which authorizes review only of "final agency action," 5 U.S.C. § 704, section 252 does not provide that there must be a "final" determination after exhaustion of all available remedies. It requires only that there be "a determination." A state commission's decision can be "a determination" <u>even if it is subject to a request for rehearing</u> so long as the decision is operational or binding on the parties in the absence of a request for rehearing….

Order Denying Motions to Dismiss at 16 n.5 (emphasis added) (quoting <u>AT&T Communications Sys. v. Pacific Bell</u>, 203 F.3d 1183, 1186 (9th Cir. 2000) (citing <u>GTE South, Inc. v. Morrison</u>, 199 F.3d 733, 744 (4th Cir. 1999))). Thus, unlike appeals of orders of federal agencies under the APA, complaints filed under Section 252 of the 1996 Act are not rendered unripe by the pendency of a motion for reconsideration before the state commission. Indeed, the Fourth Circuit has held that, under the 1996 Act, parties may challenge even <u>interim</u> rates, expressly subject to change by a final rate determination in the future, because delaying review would directly contravene Congress's intent to introduce meaningful competition in local telephone markets "as quickly as possible." <u>GTE South, Inc.</u>, 199 F.3d at 733 (quoting H.R. Rep. No. 104-204, at 89 (1995)). Accordingly, this Court correctly held that MCI's challenges under Section 252 of the 1996 Act to the prior UNE rates were ripe for review even though they were potentially to be revised by the MPSC on the same grounds raised by MCI in this Court. <u>See</u> Order Denying Motions to Dismiss at 16 n.5 (MCI claims were ripe even though "the decision in the new case [the Final UNE Order], will likely address the same issues that [MCI] wishes this Court to address"). Those principles apply with equal force here. The Final UNE Order is a final "determination" of the MPSC that sets UNE rates that are binding on the parties and are currently in effect. MCI's claims, therefore, are ripe, and the pending petitions for

6

reconsideration do not preclude this Court from reviewing Counts Three through Six of the Second Amended Complaint.[2]

## II. COUNTS ONE AND TWO OF MCI'S SECOND AMENDED COMPLAINT ARE PROPERLY BEFORE THIS COURT.

Defendants' assertion that Counts One and Two of the Second Amended Complaint are moot is based on the mistaken premise that, as a result of the Final UNE Order, the UNE rates adopted in the Phase II proceedings do not, and cannot prospectively, govern MCI's purchase of UNEs under the Verizon-MCI interconnection agreement. Verizon Mem. at 5 & n.12; MPSC Mem. at 11-12. Those counts challenge the MPSC's decision to base UNE rates on a cost model that does not comply with the FCC's TELRIC methodology and fails to assume the existence of an efficient and least-cost network configuration as required by the FCC regulations. See Second Am. Compl. ¶¶ 37-51.

MCI obviously recognizes that the Final UNE Order adopts new UNE rates. Verizon's assertion, however, that the prior "Phase II" rates "under no circumstances can . . . be in effect or necessarily part of an interconnection agreement between Verizon and MCI" is incorrect. Verizon Mem. at 5 n.12. As explained above, several parties have sought reconsideration of the Final UNE Order, and Cavalier Telephone Midatlantic, LLC ("Cavalier") expressly requested

---

[2] Verizon glibly suggests that dismissing MCI's claims will not cause MCI harm because it is seeking the same relief from the MPSC on reconsideration. See Verizon Mem. at 7 n.13. To the contrary, because the unlawful UNE rates adopted by the MPSC are currently in effect, MCI is legally harmed every day that it must pay those unlawfully high UNE rates to Verizon, thus critically hampering its ability to compete effectively in Maryland's local telephone markets. Moreover, as the procedural history of this case demonstrates, there is no reason to presume that the MPSC will resolve the reconsideration petition with sufficient speed to mitigate those harms; nearly two and a half years elapsed between MCI's July 1998 reconsideration petitions in Docket No. 8731, and the MPSC's resolution of those petitions in a January 2001 ruling. See Order No. 76694 at 2.

that the MPSC reinstate the rates set in the Phase II proceedings. See In re the Investigation into Recurring Rates for Unbundled Network Elements Pursuant to the Telecommunications Act of 1996, Case No. 8879, Reply to Petition for Reconsideration and Mot. for Stay of Non-recurring Charges, at 7 (Md. Pub. Serv. Comm'n filed Sept. 12, 2003) (attached hereto at Exh. 1). Because the MPSC has not yet ruled on the reconsideration petitions, including Cavalier's, MCI has reasonable grounds to believe that the MPSC may reinstate the Phase II rates, and that those rates will thus be again incorporated into the MCI-Verizon interconnection agreement.[3] Moreover, unlike Counts Three through Six, Counts One and Two have been part of this action for over three years. If MCI had voluntarily withdrawn those two counts from its Second Amended Complaint, and if Cavalier's petition were subsequently granted by the MPSC, MCI would undoubtedly have faced a motion to dismiss by defendants on both statue of limitations and waiver grounds.

If and when the MPSC denies Cavalier's petition for reconsideration, MCI will voluntarily dismiss Counts One and Two. And MCI would be amenable to staying Counts One

---

[3] Verizon relies on a December 2002 MPSC letter ruling in a docket concerning Verizon's compliance with Section 271 of the 1996 Act for the proposition that the Phase II UNE rates can never come back into effect. See Verizon Mem. at 5 n.12. That reliance is misplaced for three reasons. First, as discussed above, Cavalier has moved for reinstatement of the Phase II rates. If that motion is granted, the Phase II rates presumably will be in effect. Second, it is not clear whether the MPSC's conclusion in the letter ruling that Verizon should reinstate agreed-to interim rates if the Final UNE Order is "overturned on appeal. . . by the Court" would apply in the circumstances that defendants have hypothesized here — e.g., if the MPSC reverses its own decision on reconsideration prior to judicial review. Verizon Mem. Exh. 2 at 9. Finally, as confirmed by the chart attached to the December 17, 2002 letter that Verizon cites in its Memorandum, the MPSC's letter does not substitute agreed-to rates for all of the Phase II rates, but instead only modifies prices for a subset of the UNEs whose rates were set in that proceeding. See Exh. 2 (chart prepared by Verizon to identify the source of its 271 rates); see also Verizon Mem. Exh. 3 at 1-2 (interpreting the MPSC's letter ruling to require only that it revisit rates for certain UNEs). Accordingly, even if the MPSC's hypothetical reconsideration of the Final UNE Order were to trigger the rate reinstatement referenced in the MPSC's letter ruling, several UNE rates would continue to be governed by the Phase II pricing decision.

and Two until such time as the MPSC disposes of Cavalier's petition. Nevertheless, given that Cavalier's request for reinstatement of the Phase II rates creates reasonable grounds to suspect that those rates will once again govern the carriers' interconnection agreement, MCI has a legitimate interest in obtaining a declaratory ruling that the Phase II rates violate the 1996 Act and the FCC's rules for the reasons set forth in Counts One and Two of the Second Amended Complaint.

Moreover, even if the Court were to conclude that MCI's claims in Counts One and Two are, in fact, moot at this time, it would be proper for this Court to exercise jurisdiction under the exception to the mootness doctrine for issues that are "capable of repetition yet evading review." See, e.g., AT&T Communications of the Southern States, Inc. v. BellSouth Telecomms., No. 3:97-2164-17, slip op. at 5-6 (D.S.C. May 24, 2000) (claims challenging the lawfulness of expired UNE rates should not be dismissed as moot where the identical issues that evaded review are likely to infect future state commission proceedings) (attached hereto at Exh. 3). See generally Virginia Soc. for Human Life, Inc. v. Federal Election Comm'n, 263 F.3d 379, 390 n.3 (4th Cir. 2001); Virginia v. Tenneco, Inc., 538 F.2d 1026, 1031 (4th Cir. 1976); Weinstein v. Bradford, 423 U.S. 147, 149 (1975).[4]

## CONCLUSION

For the foregoing reasons, the motions to dismiss should be DENIED.

---

[4] If this Court were to dismiss Counts One and Two as moot, MCI respectfully requests that it expressly be without prejudice to its right to challenge the Phase II rates if they are reinstated by the MPSC.

        Respectfully submitted,

        MCI WORLDCOM NETWORK SERVICES, INC.
        and MCIMETRO ACCESS TRANSMISSION
        SERVICES LLC

        _____

| | |
|---|---|
| Jeffrey A. Rackow (No. 14858) | Michael B. DeSanctis (No. 15043) |
| MCI | Robin M. Meriweather |
| 1133 19th Street, N.W. | JENNER & BLOCK, LLC |
| Washington, D.C. 20036 | 601 13th Street, N.W. |
| Telephone: (202) 736-6933 | Washington, D.C. 20005 |
| Facsimile: (202) 736-6072 | Telephone: (202) 639-6000 |
| | Facsimile: (202) 639-6066 |

        *Counsel for MCI*

November 17, 20003

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 17th day of November, 2003, a copy of the foregoing Memorandum of Law In Opposition to Defendants' Motions to Dismiss Second Amended Complaint, and Exhibits, were filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                        /s/ Robin Meriweather_____
                                        Robin Meriweather