IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MCI WORLDCOM NETWORK  :
  SERVICES, INC., et al.,  :
    Plaintiffs  :
      :
v.  :    Civil No. AMD 00-1518
      :
VERIZON MARYLAND, INC., et al.,  :
    Defendants  :

...o0o...

MEMORANDUM OPINION

This case arises under the local compensation provisions of the Telecommunications Act of 1996. Plaintiffs, MCI WorldCom Network Services, Inc., and MCI Metro Access Transmission Services, LLC (collectively,"MCI"), seek declaratory and injunctive relief against the Maryland Public Service Commission and its Commissioners (sued in their official capacity) (collectively, "PSC" or "the Commission") and Verizon Maryland, Inc. ("Verizon"), a competing telecommunications provider. I stayed the proceedings in this case twice. My most recent order issued in March 2003 pending the resolution of an ongoing administrative proceeding, Case No. 8731, which was then before the Commission. *MCI WorldCom Network Services, Inc. v. Verizon Maryland, Inc.,* No. AMD-00-1518, (D. Md. March 31, 2003). At that time, I also denied the defendants' motions to dismiss. *Id*. On June 30, 2003, the Commission issued its order in that case, Order No. 78552 (the "June 30, 2003 Order"). Soon thereafter, I directed the parties to submit supplemental status reports regarding the effect of the June 30, 2003, Order on the stayed case. Subsequently, I issued a new scheduling order and MCI filed its second amended complaint in accordance with that

order.

Now pending are defendants' motions to dismiss MCI's second amended complaint. The issues have been fully briefed and no hearing is necessary. For the reasons set forth below, I shall grant defendants' motions.

I.

A.

The Telecommunications Act of 1996 ( "the 1996 Act" or "the Act"), Pub. L. 104-104, 110 Stat. 56, codified at 47 U.S.C. §§ 151 *et. seq.*, mandated the creation of a new telecommunications structure that would foster competition in local telephone markets. It required that all telephone carriers interconnect directly or indirectly with the facilities and equipment of other telephone carriers. 45 U.S.C. § 251(a); *Verizon Md., Inc. v. Public Service Commission*, 535 U.S. 635, 638 (2002). To achieve this result, incumbent local exchange carriers ("ILECs") such as Verizon were required to enable their competitors, so-called "competitive local exchange carriers" ("CLECs") such as MCI, to interconnect with ILEC networks so that CLECs could use those facilities to provide competing local telephone service. 47 U.S.C. § 251(c)(2); *Verizon Md. Inc.*, 535 U.S. at 638. The Act also directed that ILECs offer constituent parts or "elements" of their networks for leasing by new entrants on an element-by-element or unbundled basis, called unbundled network elements ("UNEs"), at rates, terms, and conditions that are "just, reasonable and nondiscriminatory." 47 U.S.C. § 251(c). Additionally, Congress required ILECs to make any telecommunications

service that the ILEC offers to its own customers available to enable new entrants to resell those services to their own customers. 47 U.S.C. § 251(c)(4).

The 1996 Act allows an ILEC and CLEC to "negotiate and enter a binding agreement" to fulfill the congressional mandate under the Act. 47 U.S.C. §§ 251(c)(1), 252(a)(1). If the two carriers are unable to fully negotiate an agreement, each may petition the relevant state public utility commission and seek "arbitration" to resolve the disputed issues. 47 U.S.C. § 252(b)(1). Once an agreement is reached, the carriers submit that agreement to the state commission. The relevant commission is tasked with ensuring that the agreement is consistent with the requirements of the Act and relevant state law. 47 U.S.C. § 252(e)(1)-(3).

The FCC established a specific method for price setting that is used when an ILEC and a CLEC can not reach an agreement through negotiations. *In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, First Report and Order, 11 F.C.C.R. 15499 (rel. Aug. 8, 1996)("Local Competition Order"). The Local Competition Order requires state commissions to use the "total element long-run incremental cost" ("TELRIC") methodology to resolve disputes between carriers regarding the costs that ILECs are entitled to recover from a new entrant for providing interconnection and network elements. *Local Competition Order*, ¶¶ 672-732. The Supreme Court upheld the FCC's TELRIC methodology after it was rejected by the Eighth Circuit. *Verizon Communications, Inc. v. FCC*, 533 U.S. 467 (2002).

B.

Shortly after the passage of the 1996 Act, this case arose out of negotiations between MCI and Verizon[1] to reach an interconnection agreement. On August 27, 1996, MCI filed a petition with the Commission for compulsory arbitration of unresolved issues, including the leasing rates of UNEs and points of interconnection between the two companies' networks. Sec. Am. Compl. ¶ 25. The Commission made MCI a party to an ongoing arbitration, Case No. 8731, in which the Commission was considering interconnection agreements between other new entrants and Verizon. Prior to the hearings in that docket, MCI joined AT & T in advancing the use of a cost method known as the "Hatfield Model" for setting UNE rates. Verizon offered a competing model. In November 1996, the Commission issued Order No. 73010 in Case No. 8731 in which it set interim rates for various elements of interconnection between local exchange carriers and other telecommunication carriers. Commission Order No. 73010, at 16-17 (rel. Nov. 8, 1996). At the same time, the Commission instituted "Phase II" proceedings to consider the competing cost models for establishing UNE rates. The Commission also endeavored to set permanent UNE rates as a result of the Phase II hearings. Ultimately, the Commission issued a Phase II order, Order No. 74365, in which the Commission declined to rely solely on any of the cost models proposed by various parties in the case and instead adopted its own methodology, which melded the Hatfield model with the Verizon cost model. Commission

---

[1]At the time that the events surrounding this case began, Verizon was known as Bell-Atlantic-Maryland, Inc.

Order No. 74364, at 12-13 (rel. July 2, 1998). This methodology was used to set permanent rates.

The Commission held "Phase (b)" hearings to resolve all outstanding issues in the MCI-Verizon arbitration. On April 24, 2000, the Commission approved the final Interconnection Agreement between MCI and Verizon which incorporated the terms arbitrated by the Commission. *Id*. ¶ 34; Verizon Mot. to Dismiss at 3. On March 24, 2000, MCI filed its first complaint in this case asserting that PSC's resolution of the pricing disputes in the arbitration agreement, *inter alia*, violated the 1996 Act and implementing regulations.

In September 2000, MCI requested that the Commission reconsider the Phase II UNE rates. The Commission ostensibly denied MCI's request, formally closed the Phase II proceedings and Case No. 8731, and opened a new docket, Case No. 8897, to reexamine and establish permanent UNE rates in Maryland. Commission Order 76694, at 3 (rel. Jan. 19, 2001). In its order, the Commission directed all parties to update and modify the Phase II cost studies, models, and rates and to address the effect of the relevant UNE regulations and judicial decision on the Phase II order. *Id*. Subsequently, the Commission issued the June 30, 2003 Order. Commission Order 78552, at 17 (rel. June 30, 2003). In that order, the Commission replaced the UNE rates which melded the Hatfield and Verizon models and instead adopted Verizon's cost model. *Id*.

On July 31, 2003, MCI filed a petition for reconsideration and request for clarification

in response to the June 30, 2003, Order. Other parties to the order, including Verizon, also filed petitions for reconsideration. Those petitions are currently pending before the Commission.

MCI filed its first amended complaint in this case in September 2000 claiming that the initial Phase II UNE rates were unlawful under the 1996 Act. On March 31, 2001, I stayed those proceedings pending the outcome of the Commission's docket which was expected to affect the issues raised in MCI's complaint. At the same time, I denied, on numerous grounds, defendants' motions to dismiss. *MCI WorldCom Network Serv., Inc.,* No. AMD-00-1518. Subsequent to the June 30, 2003 order, MCI filed its second amended complaint in this case.

C.

MCI's second amended complaint alleges that the previously adopted Phase II UNE rates and the rates adopted in the June 30, 2003, Order are unlawful under the 1996 Act. MCI requests declaratory and equitable relief. Specifically, in count one of the second amended complaint, MCI claims that the Commission's UNE rates resulting from the Phase II proceedings are unlawful because they (1) are not based on long-run, forward-looking cost methodology; (2) rely on embedded costs; (3) result from a "melding" of Verizon's and MCI's proposed loop rates; and (4) are based on inputs that the Commission arbitrarily and capriciously adopted. Relatedly, count two challenges the incorporation of the Phase II UNE rates into the arbitrated MCI-Verizon Interconnection Agreement. Counts three through six

are related to UNE rates used in the June 30, 2003, Order; as mentioned above, that order is currently pending before the Commission.

II.

Defendants have moved for dismissal of MCI's second amended complaint on mootness and ripeness grounds. I now turn to address their arguments.

A.

Federal court jurisdiction is limited to actual cases or controversies. U.S. CONST., art. III, § 2, cl. 1; *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). The case or controversy requirement mandates that an actual case or controversy "be extant at all stages of review, not merely at the time the complaint is filed." *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). A case is rendered moot when it "has lost its character as a present, live controversy of the kind that must exist if [the court is to] avoid advisory opinions on abstract propositions of law." *Maryland Highway Contractors Ass'n, Inc. v. Maryland,* 933 F.2d 1246, 1249 (4th Cir. 1991)(citing *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 414 (1972)).

The Commission and Verizon move to dismiss counts one and two of MCI's second amended complaint on the grounds that these counts can no longer be characterized as presenting an actual case or controversy. Counts one and two of the second amended complaint are substantially the same as the claims in MCI's first amended complaint. In those counts, MCI challenged the Commission's adoption of UNE rates in Order No. 8731

as violative of the 1996 Act. However, as all parties concede, the UNE rates at issue in counts one and two of the first amended complaint are no longer in effect and have been superceded by the rates adopted in the June 30, 2003 order. PSC Mot. to Dismiss at 11; Verizon Mot. to Dismiss at 4; MCI Opp'n to Mot. to Dismiss at 7. Thus, any ruling by this court in regard to the lawfulness of the earlier UNE rates would constitute a mere advisory opinion because the Phase II rates are no longer applicable to the MCI-Verizon Interconnection Agreement. *See Md. Highway Contractors Assoc. Inc*, 933 F.2d at 1249.

MCI argues that counts one and two are not moot because the Phase II UNE rates could potentially be reinstated. Cavalier Telephone Midatlantic, LLC ("Cavalier") has requested in a pending petition for reconsideration that the Commission reinstate the abandoned Phase II UNE rates. Thus, the Commission could conceivably reincorporate the old UNE rates into the MCI-Verizon agreement. MCI suggests that it would be amenable to staying counts one and two pending the Commission's reconsideration of the earlier rates. MCI also argues that had it voluntarily withdrawn the two counts, which have been part of this case for three years, and PSC subsequently granted Cavalier's petition to reinstate the UNE rates, MCI would have faced a motion to dismiss on statute of limitations and waiver grounds upon reintroducing those counts.

MCI's argument is not persuasive. If a "court can no longer serve the intended harm-preventing function or has no effective relief to offer, the controversy is no longer live and must be dismissed as moot." *Friedman's, Inc.*, 290 F.3d at 197 (quoting *County Motors v.*

*General Motors Corp.*, 278 F.3d. 40, 43 (1st Cir. 2002)).  The mere possibility that the Commission could reinstate the Phase II UNE rates does not create a live controversy on the basis of which this court can provide effective relief.[2]

Finally, MCI contends that if counts one and two are moot, I should consider these claims under the exception to the mootness doctrine for issues that are "capable of repetition yet evading review." In making this argument, MCI cites to *AT & T Communications of the Southern States v. BellSouth Telecomms.*, No.3:97-2164, slip op. at 5-6 (D.S.C. May 24, 2000). *AT & T Communications of the Southern States* is inapposite to the case presented here. In *AT & T Communications of the Southern States*, AT & T asked the district court to consider the Statement of Generally Available Terms and Conditions ("SGAT") as well as an approved interconnection agreement. By the time the case was considered by the court, the SGAT had expired. *Id*. at 5. The court proceeded to consider the issues raised by the SGAT in spite of its expiration under the exception to the mootness doctrine, *inter alia*, because the issues were likely to reoccur during the negotiation of the next SGAT. *Id*. at 6. It was also relevant that the issues to be decided under the SGAT were the same as those raised by the interconnection agreement that was also at issue. In contrast, the Commission

---

[2]The Commission notes that the Cavalier petition for reconsideration only asks for reinstatement of the *non-recurring* charges for the UNEs and the Commission's decision would have no effect on the *recurring* UNE costs to which MCI objects. PSC Mot. to Dismiss at 4. As previously stated, however, even the possibility that at some unspecified time in the future the Commission could reinstate the Phase II UNE rates does not presently create an actual case or controversy as required under Article III and whether or not the reinstatement would change the recurring or non-recurring charges is not dispositive.

replaced the rates that MCI now asks me to consider. Thus, there is no reason, other than pure speculation as to the potential outcome of the pending administrative proceedings, to expect that the PSC will reinstate the Phase II rates. The court in *AT & T Communications of the Southern States* also noted that, unlike the situation here, the issues had been fully briefed on the merits. *Id*. Thus, the exception to the mootness doctrine for issues that are that are "capable of repetition yet evading review" provides no shelter for MCI. Counts one and two of the second amended complaint are dismissed as moot.

B.

Defendants move to dismiss the remaining counts of the second amended complaint on the grounds that MCI has failed to exhaust its administrative remedies and, therefore, its claims are not ripe for judicial review.

In general, a party must exhaust available administrative remedies before a case will be considered ripe for judicial review. *Placeway Const. Corp. v. United States*, 920 F.2d 903, 906 (Fed. Cir. 1990). The ripeness doctrine is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Thus, a ripeness inquiry requires a two-fold inquiry: (1) whether the issues are fit for judicial determination; and (2) whether a hardship to the parties would result from withholding judicial review. *Id*. With respect

to the first prong of the ripeness inquiry, a case will be fit for judicial review "where the agency rule of action giving rise to the controversy is final and not dependent on future uncertainties or intervening agency rulings." *Arch Mineral Corp. v. Babbitt*, 104 F.3d 660, 665 (4th Cir. 1995) (citing *Charter Fed. Savings Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1997)).

Defendants contend that the case is not fit for judicial determination because MCI has a pending petition for reconsideration in which MCI raises the same issues that MCI asks the court to consider in counts three through six. Consequently, the Commission argues that the administrative record is not complete. Further, the Commission points to the fact that MCI *requested* administrative relief as a factor to be considered by the court. In response, MCI cites to my earlier ruling in this case, as well as *AT & T Communications Sys. v. Pacific Bell,* 203 F.3d 1183 (9th Cir. 2000), for the proposition that unlike the Administrative Procedure Act, the Telecommunications Act of 1996 does not require exhaustion of all available remedies before a case is ripe. Pl. Opp'n to Motion to Dismiss at 6 (citing *MCI WorldCom Network Services, Inc.,* No. AMD-00-1518 at 16 n. 5). Rather, under the Telecommunications Act of 1996 only a "determination" is required.

MCI's reliance on my earlier decision and *AT & T Communications* is misplaced. First, my earlier denial of defendants' motions to dismiss was based on the fact that the Commission had "clearly denied" MCI's petitions to reconsider the Phase II rates and had closed the docket in that case. *See MCI Network Services,* No. AMD-00-1518 at 14. Indeed, I emphasized the fact that the Commission had made a formal disposition by denying MCI's

petition for reconsideration of the UNE rates. *Id*. at 14-15. This formal disposition rendered the Commission's decision a final determination for the purposes of the 1996 Act, section 252. *See ICC v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 280-81 (1987) ("[w]here the Commission's formal disposition is to deny reconsideration, and where it makes no alteration to the underlying order, we will not undertake an inquiry into whether reconsideration 'in fact' occurred . . . it is the Commission's formal action, rather than its discussion, that is dispositive."). In contrast, as to the June 30, 2003, Order, there are pending motions for reconsideration which the Commission has yet to consider. Thus, to the extent that the administrative record related to the June 30, 2003, Order remains open, the record is incomplete and not fit for judicial determination.

      Furthermore, the Ninth Circuit's decision in *AT & T Communications* is easily distinguished from this case. In *AT & T Communications*, AT & T failed to exhaust state remedies by not petitioning for a hearing before the relevant public service commission in accordance with the applicable public utilities code. *AT & T Communications*, 203 F.3d 1185. The defendant Public Service Commission argued that AT & T's failure to exhaust all available administrative remedies rendered the case unripe. *Id*. at 1185-86. The court held that the AT & T's failure to comply with *state* exhaustion requirements did not prevent the court from reviewing the case. *Id*. The court noted that the commission in that case had closed the "parties' application for review" and concluded that section 252's exhaustion requirement was met. *Id*. at 1186. In contrast, in this case, the motion to dismiss does not

allege that MCI has failed to comply with state exhaustion requirements. Rather, MCI has chosen to subject itself to state procedures by petitioning the Commission for a review of the June 30, 2003, Order. It is essential that administrative process of which MCI has purposefully availed itself be completed without interference from the courts. *Abbott Labs.*, 387 U.S. at 148-149. Ultimately, I am constrained to conclude that the remaining claims in MCI's second amended complaint are not ripe for review and the motion to dismiss counts three through six must be granted.[3]

IV.

For the reasons stated, the second amended complaint shall be dismissed without prejudice. An order follows.

Filed: December 18, 2003

/s/
Andre M. Davis
United States District Judge

---

[3] Notably, MCI has not argued that it seeks monetary or similar relief that might support the exercise of jurisdiction over this case for the purpose of a possible award of compensatory damages.